|,WALTZER, Judge.
This appeal concerns the civil commitment of an individual, J.C., for treatment of his mental disability.
STATEMENT OF FACTS AND HISTORY OF THE CASE
On 29 December 2000, NOPD officers detained J.C. and took him to a psychiatric facility for evaluation. The officers explained to hospital personnel that J.C. was extremely agitated and creating a disturbance in the street.
On 12 January 2001, the State petitioned for J.C.’s commitment to a treatment facility, since he is gravely disabled. J.C. has been diagnosed with a mental disease, schizophrenia. He does not speak a coherent language, he is disorganized and has no insight into his disease, he does not cooperate with treatment, i.e. taking his medication, and he is unable to control his impulses.
Both J.C.’s treating psychiatrist, Dr. Jeffrey Rouse, and Dr. Guillermo Urrutia, a court appointed psychiatrist, recommended J.C.’s commitment to a treatment facility. They believe him gravely disabled,[1] not an immediate danger to himself or others. However, both doctors agree that J.C.’s behavior has the |gpotential to provoke violence. J.C. becomes agitated, has difficulty communicating, and refuses to respect society’s expectations about personal space. J.C. has no home, lives on the street or in a shelter, has little support for basic needs from his family, refuses to take his medication, has repeatedly failed to respond to outpatient care, and is unable to make informed decisions regarding treatment of his condition.
*658 After a hearing, the trial court ordered J.C.’s commitment to a treatment facility for 180 days by judgment dated 25 January 2001. J.C. appeals this judgment, arguing that the State failed to adequately prove any basis allowed by law for J.C.’s commitment.
DISCUSSION
To commit an individual under the Mental Health Law, the petitioner must show by clear and convincing evidence that the respondent is dangerous to himself or others or is gravely disabled due to substance abuse or mental illness. LSA-R.S. 28:55(E)(1) and In re H.W., 94-0406 p. 3 (La.App. 4 Cir. 9/29/94), 644 So.2d 225, 227. On appeal, the evidence must be reviewed for strict adherence to the enhanced standard of proof required by constitutional and statutory law, notwithstanding the great deference that appellate courts traditionally accord a trial court’s factual findings. Absent manifest error, this court must affirm the decision of the trial court. However, the deprivations to personal liberty interests involved in a civil commitment require that the procedure ensure due process protections. Thus, petitioner cannot prevail without proof of at least one of the three statutory grounds for commitment. Id.
A person may be committed when he is found to be “gravely disabled.” The Mental Health Law defines that term to mean,
lathe condition of a person who is unable to provide for his own basic physical needs, such as essential food, clothing, medical care, and shelter, as a result of serious mental illness or substance abuse and is unable to survive safely in freedom or protect himself from serious harm.
LSA-R.S. 28:2(10). In order to prove grave disability, the petitioner is required to establish that a person is both unable to provide for his basic needs and unable to survive safely in freedom or protect'himself from serious harm. The statute clearly provides that both elements be proven; the contention that proof of either of these elements is sufficient has been expressly rejected. In re H.W., supra at 228.
J.C. has suffered from serious mental illness for most of his life. He has been hospitalized numerous times for his condition but he does not comply with out patient care. Both Dr. Rouse and Dr. Ur-rutia diagnosed J.C. as suffering from schizophrenia. Although he takes his medication as directed during hospitalization, he does not comply with the prescribed treatments upon release. His thought processes are disorganized and he has no insight into his mental illness. He is easily agitated and does not understand or respect society’s normal expectations regarding personal space.
J.C. has no home. He has relatives in the community, but they do not care for him on a regular basis. However, one relative is the designated payee on J.C.’s government check. The record contains no evidence of how J.C. survives.
J.C. has trouble with communication. Dr. Urrutia believes he speaks a mixture of Spanish and English, but Dr. Urrutia, who is bilingual, has trouble understanding J.C.
Both Dr. Rouse and Dr. Urrutia opined that J.C. is gravely disabled. Both doctors testified that they did not believe J.C. could provide for his basic needs. He does not have a home. He lives on the street or in a shelter. He does not show Rsigns of starving but the doctors do not know how he obtains food or clothing. They know he is not the designated payee on his check but they do not know how or who manages his money. Dr. Urrutia has seen him in the French Quarter begging for money. *659 Both doctors agree that J.C. is unable to contribute to treatment of his mental illness or make informed decisions about his condition. We find no error in the trial court’s conclusion that J.C. is unable to provide for his basic needs.
We must consider whether petitioner has adequately proven that J.C. is unable to survive safely in freedom or protect himself from serious harm. Under these facts, this issue is the more difficult hurdle. The police officers detained J.C. in December 2000 when they found him in an agitated state in a public street. They brought him to the hospital for evaluation. J.C. is apparently easily agitated. He has difficulty communicating. He does not respect society’s expectations of personal space. Both Dr. Rouse and Dr. Urrutia expressed concerns about J.C.’s behavior provoking danger to his person in an unsupervised environment. However, there is no evidence in the record that this danger is imminent or probable. Both Dr. Rouse and Dr. Urrutia testified that they did not believe J.C. could survive safely in an unsupervised environment at this time. Our review of the record convinces us that the State has met its burden of proof. Dr. Rouse testified, “And with this bizarre behavior, I do not believe he [J.C.] would be safe left to his own devices.” Dr. Rouse answers the question “In your opinion, can he survive safely outside a structured environment at this time?” by saying “That is questionable at best. So, I would say no.” Likewise, Dr. Urrutia answers virtually the same question by saying “I would have to say no. But he can surprise me |aagain.” For the reasons discussed above, we affirm the trial court’s judgment, committing J.C. to an appropriate medical facility for a period of 180 days.
CONCLUSION
We affirm the trial court’s judgment.
AFFIRMED

. Dr. Urrutia has known J.C. for more than 10 years, and Dr. Rouse observed J.C. during his most recent hospitalization for a period of several weeks. Both doctors base their conclusions on their personal observations and J.C.’s medical records and history.