MAX N. TOBIAS, JR., Judge.
LThe petitioner/appellant, LSU Board of Supervisors, Health Sciences Center, Med *493 ical Center of Louisiana at New Orleans (“LSU”), appeals from a judgment denying its petition for judicial commitment of respondent/appellee, J.G.[1] After reviewing the record and applicable law, we affirm the judgment.
J.G., a man in his mid-forties, was admitted to the LSU Behavioral Health Center on 10 April 2008 after a Physician’s Emergency Certificate was completed. The doctor who completed the Physician’s Emergency Certificate noted that J.G. was not a proper subject for emergency admission, stating in his chart that he “wants help-willing to sign FVA [formal voluntary admission].”
On 11 April 2008. J.G. was voluntarily admitted to LSU by David Murdock, M.D. On the day of his planned discharge, 23 April 2008, J.G. attempted to hang himself. On 25 April 2008, J.G. signed a written request for his release in | .¿accordance with La. R.S. 28:52.2.[2] J.G. was not, however, discharged pursuant to his request.
On 2 May 2008, J.G. signed a formal voluntary admission form. On 5 May 2008, LSU filed a petition for judicial commitment alleging, inter alia, that J.G. was “unable or unwilling to seek needed treatment on a voluntary basis.”
LSU’s petition was heard on 22 May 2008. The request for involuntary commitment was denied the following day by the trial court. In its reasons for judgment, the trial court stated J.G. demonstrated the ability to understand the standard set forth in the statute for a voluntary commitment and the court saw no reason to circumvent his rights.[3]
*494 |3On 24 June 2008, J.G. was discharged from LSU to enter the substance abuse program at Bridge House in New Orleans.
LSU has assigned three errors for our review. First, it argues that the trial court failed to find that J.G. suffered from a serious mental illness and was, by reason thereof, a danger to himself.[4] Second, LSU contends that the trial court disregarded evidence that J.G. made a formal written application for release from LSU after he signed a formal voluntary admission form. Lastly, LSU claims that the trial court defined the requirements for formal voluntary admission too narrowly.
The trial court heard testimony from J.G.’s treating physician, Dr. Murdock, and psychiatrist, Ciro Juarez, M. D., who examined J.G. twice for purposes of the hearing. Both doctors testified that J.G. suffers from Post Traumatic Stress Disorder (“PTSD”) and depression, with a history of opiate addiction. They were concerned with J.G.’s attempted suicide while in the hospital and his statements that he wanted to get out of the hospital so he could “finish what I started.” They testified that J.G. was not an appropriate candidate for voluntary admission pbecause he lacked the capacity to consistently make informed decisions concerning his medical treatment, pursuant to them understanding of La. R.S. 28:52(A).[5]
J.G. testified, stating that he wanted to be voluntarily committed to Southeast Louisiana Hospital, which he knew was a psychiatric hospital in Mandeville, Louisiana. He wanted to go to that facility because it had more open space and he could get professional help there. He testified that he would give those doctors the ability to detain him if he wanted to leave against their medical advice. When asked about continuing thoughts of suicide, J.G. stated that the new medication on which he had been placed had just started to work and was making a big difference in his life.
The trial court found that J.G. had satisfied the standard for voluntary commitment under the statute, stating:
And the statute tells you what is knowing and voluntary. That means that the individual understands that the treatment facility that he’s requesting to be admitted to is, one, for a mentally ill person or person suffering from substance abuse, two, that he is making an application for admission, and three, the nature of his status and the provisions governing discharge.
[[Image here]]
The patient took the witness stand. He does not have a problem understanding or comprehending what is being said and what he’s saying.
Consequently, the trial court denied LSU’s petition.
|sTo commit an individual under the Mental Health Law, La. R.S. 28:50, et seq., LSU must show by clear and convincing evidence that J.G. is dangerous to himself or others or is gravely disabled due to substance abuse or mental illness. La. *495 R.S. 28:55(E)(1);[6] In re H.W., 94-0406, p. 3 (La.App. 4 Cir. 9/29/94), 644 So.2d 225, 227. On appeal, the evidence must be reviewed for strict adherence to the enhanced standard of proof required by constitutional and statutory law, notwithstanding the great deference that appellate courts traditionally accord a trial court’s factual findings. Absent manifest error, this court must affirm the decision of the trial court. However, the deprivations to personal liberty interests involved in a civil commitment require that the procedure ensures due process protections. Thus, a petitioner such as LSU cannot prevail without proof of at least one of the three statutory grounds for commitment. Id.; In re J.C., 01-0328 (La.App. 4 Cir. 5/23/01), 790 So.2d 656.
In its first assignment of error, LSU argues that because J.G. did not present medical evidence to contradict the testimony of its two expert psychiatrists, the trial court erred by not finding that he suffered from a serious mental illness and, as a direct result, was a danger to himself. As in any case where the trial court is required to evaluate witness testimony, the standard of review is manifest error/clearly wrong. Obviously, the trial court placed great weight on J.G.’s | ^testimony and less weight to that of the physician experts. We do not find that doing so was manifestly erroneous or clearly wrong. Thus, this assignment of error is without merit.
In the second assignment of error, LSU contends that, contrary to the trial court’s statements in its reasons for judgment, J.G. had made a written application for release from LSU and was familiar with the procedures for seeking his release. It is well-settled law that the trial court’s oral or written reasons form no part of the judgment. See La. C.C.P. art.1918; Carmena v. East Baton Rouge Parish Sheriff’s Office, 06-2680, p. 1 (La.2/2/07), 947 So.2d 715. Consequently, no weight is given to those statements and, further, the statements have no bearing on whether LSU proved that an involuntary commitment was warranted under the statute. This assignment of error is equally without merit.
Finally, LSU argues that the trial court interpreted the requirements for a formal voluntary admission too narrowly. La. R.S. 28:52, which sets forth the general provisions for voluntary admission, states in pertinent part:
G. No admission may be deemed voluntary unless the admitting physician determines that the person to be admitted has the capacity to make a knowing and voluntary consent to the admission.
Knowing and voluntary consent shall be determined by the ability of the individual to understand:
(1) That the treatment facility to which the patient is requesting admission is one for mentally ill persons or persons suffering from substance abuse;
(2) That he is making an application for admission, and
(3) The nature of his status and the provisions governing discharge or conversion to an involuntary status.
*496 |7LSU claims that the wording of the statute permits a fair amount of discretion on the part of the physician in determining if a patient is a suitable candidate for formal voluntary admission. Because LSU presented medical testimony regarding J.G.’s lack of capacity to consistently make informed decisions regarding his treatment, LSU maintains that the trial court erred in finding otherwise.
After reading the record on appeal, we respectfully disagree. The trial court specifically found that (1) J.G. understood the purpose of Southeast Louisiana Hospital; (2) he wanted to be admitted there; and (3) he understood the procedures for discharge and that his status could be converted to that of involuntary. The fact that the trial court chose to place more weight on J.G.’s testimony than that of Dr. Murdock does not render the trial court’s findings subject to reversal.
We are also mindful of LSU’s burden of proof and that it must strictly adhere thereto. The trial court found LSU did not sustain its burden. While it is undisputed that J.G. suffers from PTSD, depression, and opiate addiction, the trial court found that LSU did not carry its burden of proving that J.G. is a danger to himself. A finding that an individual is dangerous to himself requires that the person’s behavior, significant threats, or inaction support a reasonable expectation of a “substantial risk” that he will inflict physical or severe emotional harm upon himself. La. R.S. 28:2(4). The trial court found that J.G.’s testimony does not support such a finding. We do not find that the trial courts conclusions are manifestly erroneous or clearly wrong in view of the mandates of the Mental Health Law.
| sBased on the foregoing, we affirm the judgment of the trial court.

AFFIRMED.

. In order to protect the privacy of the appel-lee, we use his initials in lieu of his actual name. See Rule 5-2, Louisiana Uniforms Rules, Courts of Appeal.

. La. R.S. 28:52.2 provides:
A. Any mentally ill person or person suffering from substance abuse desiring admission to a treatment facility for diagnosis and/or treatment of a psychiatric disorder or substance abuse and who is deemed suitable for formal voluntary admission by the admitting physician may be so admitted upon his written request.
B. A patient admitted under the provisions of this Section shall not be detained in the treatment facility for longer than seventy-two hours after making a valid written request for discharge to the director unless an emergency certificate is executed pursuant to R.S. 28:53, or unless judicial commitment is instituted pursuant to R.S. 28:54, after making a valid written request for discharge to the director of the treatment facility.

. We are mindful of the purpose of the policy behind civil commitments. La. R.S. 28:50 states:
The underlying policy of this Chapter is as follows:
(1) That mentally ill persons and persons suffering from substance abuse be encouraged to seek voluntary treatment.
(2) That any involuntary treatment or evaluation be accomplished in a setting which is medically appropriate, most likely to facilitate proper care and treatment that will return the patient to the community as soon as possible, and is the least restrictive of the patient’s liberty.
(3) That continuity of care for the mentally ill and persons suffering from substance abuse be provided.
(4) That mental health and substance abuse treatment services be delivered as near to the place of residence of the person receiving such services as is reasonably possible and medically appropriate.
(5) That individual rights of patients be safeguarded.
(6) That no person solely as a result of mental illness or alcoholism or incapacitation by alcohol shall be confined in any jail, prison, correctional facility, or criminal detention center. This shall not apply to persons arrested, charged, or convicted under Title 14 of the Louisiana Revised Statutes of 1950.
(7) That no person shall be denied treatment solely because he has withdrawn from treatment against medical advice on a prior *494 occasion or because he has relapsed after an earlier treatment.

. We note that LSU does not assert that J.G. is a danger to others or is gravely disabled. See La. R.S. 28:53 B(2)(d)(ii) and (iii), La. R.S. 28:54 D(l), and La. R.S. 28:55 E(l).

. La. R.S. 28:52(A) states:
A. Any mentally ill person or person suffering from substance abuse may apply for voluntary admission to a treatment facility. The admitting physician may admit the person on either a formal or informal basis, as hereinafter provided.

. La. R.S. 28:55(E)(1) provides in pertinent part:
E. (1) If the court finds by clear and convincing evidence that the respondent is dangerous to self or others or is gravely disabled, as a result of substance abuse or mental illness, it shall render a judgment for his commitment. After considering all relevant circumstances, including any preference of the respondent or his family, the court shall determine whether the respondent should be committed to a treatment facility which is medically suitable and least restrictive of the respondent's liberty.